UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAN JAMES,**

       **Plaintiff,**                                                   Civil Action 2:19-cv-2
                                                                      Magistrate Judge Chelsey M. Vascura

       v.

**D&J ENTERPRISE OF OHIO, LTD.,** *et al.*,

       **Defendants.**

**OPINION AND ORDER**

Plaintiff, Dan James, brings this declaratory judgment action pursuant to 28 U.S.C. § 2201 and Ohio Revised Code § 2721.03 against Defendants, D&J Enterprise of Ohio, Ltd ("D&J Enterprise"), David Herron, and John Herron. This matter is before the Court for consideration of Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction (ECF No. 7), Plaintiff's Memorandum in Opposition (ECF No. 21), and Defendants' Reply (ECF No. 22). For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED**. (ECF No. 7.)

**I.**

On January 2, 2019, Plaintiff filed his Complaint for Declaratory Relief. (Compl., ECF No. 1.) Plaintiff resides in Zanesville, Ohio. (*Id.* at ¶ 4.) Defendant D&J Enterprise is an unincorporated partnership organized in Ohio (*id.* at ¶ 5), and Defendants David Herron and John Herron are individuals who currently reside in Zanesville, Ohio (collectively "Defendants"), (*id.* at ¶¶ 8-9). (*See also* Defs.' Mot. to Dismiss at 5, ECF No. 7 (providing that the parties all

reside in Ohio).)

Plaintiff asserts that on or around December 13, 2006, the parties executed a "Purchase Agreement," which Plaintiff alleges was a Land Installment Contract, for property located at 3150 Dillon Falls Road, Zanesville, Ohio. (Compl. at ¶ 32 and Exh. A, ECF No. 1.) The Purchase Agreement states that the "Purchase Price" for the property is $260,000.00, and provides for monthly payments of $1,500.00 "or whatever [Plaintiff] wants to pay extra per month, interest free." (*Id.* at ¶ 23.) According to Plaintiff, under the Purchase Agreement, "all payments of 'so-called rent'" would be deducted from the Purchase Price. (*Id.* at ¶¶ 24-25.) Plaintiff alleges that he has paid $217,000.00 towards fulfillment of the Purchase Agreement and has paid property taxes for the land for years 2006-2018. (*Id.* at ¶¶ 29-30.) Plaintiff asserts that Defendants have taken the position that the Purchase Agreement was "merely a lease now a month-to-month tenancy, have asked Plaintiff to vacate the property, and have threatened to immediately evict Plaintiff and terminate the Purchase Agreement without conveying any property rights or title to Plaintiff." (*Id.* at ¶ 44.)

Plaintiff further alleges that he filed a Chapter 7 bankruptcy action with this Court in 2008, (*id.* at ¶ 24), and that his bankruptcy case was discharged in 2011, (*id.* at ¶ 25). Plaintiff did no list his interest in the Purchase Agreement in his schedule of assets or disclose it to the bankruptcy court. (*Id.* at ¶ 36.) Plaintiff asserts that his failure to disclose the Purchase Agreement was a good-faith error, was not done with intent to mislead, and did not prejudice creditors. (*Id.* at ¶¶ 37-38.)

In his Complaint, Plaintiff advances two claims for declaratory relief. First, he seeks a declaration that his failure to disclose his interest in the Purchase Agreement during the

bankruptcy proceedings "was not prejudicial to the creditors and that any property rights Plaintiff has in the property or will have upon completion of the terms of the Purchase Agreement are unencumbered." (*Id.* at ¶ 39.) For his second claim, Plaintiff asks the Court to declare the rights, status, and legal relations of the parties under the Purchase Agreement and any related documents. (*Id.* at ¶ 48.)

Plaintiff posits that this Court "has jurisdiction for the First Count pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, under 28 U.S.C. §1334(a) because it concerns a bankruptcy proceeding, and 28 U.S.C. §§ 1331 and 1337, as well as under 28 U.S.C. § 1367." (Compl. ¶ 2, ECF No. 1.)

On January 10, 2019, Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. (Defs.' Mot. to Dismiss at 4, ECF No. 7.) Alternatively, Defendants request that the Court exercise its discretion to decline jurisdiction over this declaratory judgment action. (*Id.*) Defendants assert that this is a clear-cut state-court matter, and that Plaintiff is attempting to "shoehorn" this case into federal court by raising a tenuous bankruptcy issue. (*Id.*) Defendants further make arguments regarding justiciability, asserting that Plaintiff has not alleged that any creditor has challenged his discharge from bankruptcy and that Defendants "do not care about Plaintiff's bankruptcy or petition or discharge." (*Id.* at 5.)

In his Memorandum in Opposition, Plaintiff asserts that he brought this declaratory judgment action "to establish his undisputed ownership and clear title to the property in question." (Pl.'s Mem. in Opp. at 1, ECF No. 21.) He claims that his failure to list the Purchase Agreement as an asset in his bankruptcy case creates a cloud on his title, and that "[n]o

reputable title company would insure the property without the bankruptcy court's resolution of this matter." (*Id.* at 1-2.) Plaintiff contends that federal courts have exclusive jurisdiction over bankruptcy matters, and "this court should automatically refer the matter to bankruptcy court for resolution and issue a judicial declaration of the rights and obligations to the parties with respect to the property and the Purchase Agreement." (*Id.* at 2.) Plaintiff reiterates that his goal is to "establish clear title to the property." (*Id.*)

## II.

Defendants move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1), which provides for dismissal for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A facial attack on the subject-matter jurisdiction alleged in the Complaint, such as the attack here, "merely questions the sufficiency of the pleading." *Peabody Landscape Const. Inc. v. Schottenstein*, 371 B.R. 276, 278 (S.D. Ohio 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 992 F.2d 320, 325 (6th Cir. 1990)). "In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.* After a defendant challenges subject-matter jurisdiction, "[t]he plaintiff has the burden of proving jurisdiction." *Mitchell v. BMI Fed. Credit Union*, No. 2:18-CV-137, 2019 WL 1242663, at *2 (S.D. Ohio Mar. 18, 2019) (citing *Rogers v. Stratton Indus.*, 798 F.3d 913, 915 (6th Cir. 1986)).

Based on the face of the Complaint, diversity jurisdiction does not exist, as Plaintiff and Defendants are all Ohio residents. *See* 28 U.S.C. § 1332; (Compl. ¶¶ 4-9, ECF No. 1). Accordingly, in order for the Court to have subject-matter jurisdiction, Plaintiff's claims must "arise[ ] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "In

determining whether an action 'arises under' federal law, we are governed by the well-pleaded complaint rule, which requires that a federal question be presented on the face of the complaint." *Michigan S. R.R. Co. v. Branch & St. Joseph Ctys. Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987); *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152 (1908)). A case "arises under" federal law if it is apparent from the face of the complaint that either (1) the cause of action was created by federal law, or (2) "a substantial, disputed question of federal law is a necessary element of the state cause of action." *Michigan S. R.R. Co.*, 287 F.3d at 573.

### III.

Plaintiff asserts that federal jurisdiction exists because Count I of the Complaint is brought under the United States Declaratory Judgment Act ("Declaratory Judgment Act") and relates to a bankruptcy issue over which federal courts have exclusive jurisdiction. The Court disagrees. For the reasons that follow, Plaintiff has failed to meet his burden of proving subject-matter jurisdiction.

**A.     The Declaratory Judgement Act**

Plaintiff first asserts that the Court has jurisdiction over this matter under the Declaratory Judgment Act, 28 U.S.C. § 2201. (Compl. ¶ 2, ECF No. 1.) The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. However, "[t]he operation of the Declaratory Judgment Act is procedural only," *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950) (citations omitted); it does not confer federal court

5

jurisdiction, *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007). *See Skelly Oil Co.,* 339 U.S. at 671 (explaining that with enactment of the Declaratory Judgment Act, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction"). Accordingly, a federal court "'must have jurisdiction already under some other federal statute' before a plaintiff can 'invok[e] the Act.'" *Davis*, 499 F.3d at 594 (citing *Toledo v. Jackson,* 485 F.3d 836, 839 (6th Cir.2007) (quotation marks omitted)). Thus, the Declaratory Judgment Act does not serve as an independent basis for federal subject-matter jurisdiction, and the Court must have jurisdiction under another federal law or statute before Plaintiff's declaratory judgment claims may proceed in this Court.

**B.     Bankruptcy Issues**

Plaintiff further contends that federal jurisdiction exists because his first declaratory judgment claim concerns a bankruptcy proceeding. (Compl. ¶ 2, ECF No. 1 (citing 11 U.S.C. § 1334(a).) In his Memorandum in Opposition to the Motion to Dismiss, Plaintiff asserts that his goal is to establish clear title to the property subject to the Purchase Agreement, and that his failure to disclose his interest in the Purchase Agreement in his bankruptcy case creates a cloud on his title. (Pl.'s Mem. in Opp. at 1-2, ECF No. 21.) Plaintiff asks this Court to issue a declaration that his "failure to disclose the asset was not prejudicial to the creditors and that any property rights Plaintiff has in the property or will have upon completion of the terms of the Purchase Agreement are unencumbered." (Compl. ¶ 39, ECF No. 1.) Plaintiff contends that since federal courts have jurisdiction over bankruptcy matters, "this court should automatically refer the matter to bankruptcy court for resolution and issue a judicial declaration of the rights and obligations to the parties with respect to the property and the Purchase Agreement." (*Id.* at

6

2.)

Plaintiff's arguments are not persuasive. Contrary to Plaintiff's assertion, 11 U.S.C. § 1334(a) does not confer jurisdiction over this declaratory judgment action. Section 1334(a) provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11 [United States Bankruptcy Code]." Plaintiff cannot rely upon §1334(a) because he did not bring this declaratory judgment action under Title 11 of the Bankruptcy Code. *Cf. In re Wolverine Radio Co.*, 930 F.2d 1132, 1141 (6th Cir. 1991) (finding that § 1334(a) provision for "cases under title 11" "refers merely to the bankruptcy petition itself, filed pursuant to 11 U.S.C. §§ 301, 302, or 303.").

Section 1334(b) likewise fails to confer subject-matter jurisdiction over this action. Section 1334(b) provides three categories of proceedings over which district courts have jurisdiction: "'proceedings arising under title 11,'" "proceedings 'arising in' a case under title 11," and "proceedings 'related to' a case under title 11." *Id.*; *see* 28 U.S.C. § 1334(b) (". . . the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.") It is not necessary to distinguish between these three categories when determining whether a matter falls within bankruptcy jurisdiction, however, because they "operate conjunctively to define the scope of jurisdiction." *In re Wolverine Radio Co.*, 930 F.2d at 1141 (citations omitted). "Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Id.* A proceeding is "related to" a case under title 11 if "'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Peabody Landscape Const. Inc.*, 371 B.R. at 279 (quoting *Browning v. Levy*,

7

283 F.3d 761, 773 (6th Cir.2002)). Put another way, "'[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d 861, 867–68 (S.D. Ohio 2004) (quoting *Pacor*, *Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)).

Here, Plaintiff was discharged from bankruptcy on August 18, 2011. (Compl. ¶ 35, ECF No. 1.) Presumably, his bankruptcy case has been closed for almost eight years. Plaintiff now asks this Court to issue a declaration that his "failure to disclose the [Purchase Agreement] asset was not prejudicial to the creditors" and that Plaintiff's interest in the Purchase Agreement is unencumbered. (*Id.* at ¶ 39.) Plaintiff has not alleged, argued, or otherwise shown that the outcome of his declaratory judgment claim could have an effect on the administration of the bankruptcy estate. Instead, Plaintiff's focus appears to be on the effect his actions during the bankruptcy proceeding could have on his alleged title to the subject property—title which could not have vested in Plaintiff until *after* the bankruptcy proceedings. (*See* Compl. ¶ 29, ECF No. 1 (stating that, as of the filing of the Complaint, Plaintiff has paid $217,500.00 towards the total purchase price of $260,000).); (*see also* Pl.'s Mem. in Opp. at 1-2, ECF No. 21 (arguing that his failure to list the Purchase Agreement as an asset in bankruptcy creates a cloud on his title and that no title company would insure the property without resolution of the issue).) Under such circumstances, Plaintiff has failed to show how this proceeding could in any way impact the handling and administration of his bankruptcy estate.

Further, the subject "bankruptcy issue" only arises as a possible defense to Plaintiff's state-law contract claims. (*See* Pl.'s Mem. in Opp. at 1-2, ECF No. 21 (asserting that the

8

requested declaration will clear his title and stating that "[n]o reputable title company would insure the property without the bankruptcy court's resolution of this matter").) Plaintiff cannot rely on a possible defense of Defendants to create federal subject-matter jurisdiction. It is well-established that "the character of the threatened action, and not of the defense, . . . will determine whether there is federal-question jurisdiction in the District Court." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952). The United States Supreme Court has explained as follows:

> If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action.

*Id.*, 242–43. Indeed, "'a suggestion of one party that the other will or may set up a claim under the Constitution or laws of the United States does not make the suit one arising under that Constitution or those laws.'" *Skelly Oil Co.*, 339 U.S. at 672 (citations omitted). "The plaintiff's claim itself must present a federal question 'unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'" *Id.* (citations omitted).

For example, in *Skelly Oil*, Phillips Petroleum entered into a contract with Skelly Oil for the purchase of natural gas, with a condition that Skelly Oil had the right to terminate the contract if a third party, Michigan-Wisconsin Pipe Line Company, was unable to secure a certificate of public convenience and necessity from the Federal Power Commission pursuant to the Natural Gas Act. *Id.* at 669. The Federal Power Commission granted the certificate, but with several conditions. *Id.* at 670. Skelly Oil notified Phillips Petroleum of termination of the contract on the ground that Michigan-Wisconsin Pipe Line Company had not received the

9

certificate of public convenience and necessity. *Id.* Phillips Petroleum brought a claim under the Declaratory Judgment Act, seeking a declaration that the contracts for purchase of natural gas by Phillips Petroleum from Skelly Oil were still in effect because "a certificate of public convenience and necessity, 'within the meaning of said Natural Gas Act and said contracts' had been issued prior to [Skelly Oil's] attempt at termination of the contracts." *Id.* at 670-71 (citations omitted). The Supreme Court found that the Declaratory Judgment Act did not confer jurisdiction, and that Phillips Petroleum's claims did not present a federal question. The Court explained as follows:

> If Phillips sought damages from petitioners or specific performance of their contracts, it could not bring suit in a United States District Court on the theory that it was asserting a federal right. And for the simple reason that such a suit would 'arise' under the State law governing the contracts. Whatever federal claim Phillips may be able to urge would in any event be injected into the case only in anticipation of a defense to be asserted by petitioners.

*Id.* at 672. The Supreme Court concluded that Phillips Petroleum's declaratory judgment claim was not one arising under the laws of the United States. *Id.* at 674.

In *Heydon*, the Sixth Circuit reached a similar conclusion. In that case, a cable company entered plaintiffs' property to access utility poles without their consent. *Heydon v. MediaOne of Se. Michigan, Inc.*, 327 F.3d 466 (6th Cir. 2003). The plaintiffs filed a state-court action for trespass, negligence, and statutory damage to land. *Id.* at 468. The cable company asserted that the United States Cable Communications Policy Act permitted it to use the utility poles on the plaintiffs' land. *Id.* While the state-court action was pending, the landowners filed a declaratory judgment action in federal court seeking a declaration that the Cable Communications Policy Act did not allow the cable company to enter their property to access the

utility poles. *Id.* at 469. The Sixth Circuit found that neither the Declaratory Judgment Act nor the Cable Act created federal jurisdiction. The Court explained as follows:

> First, the Heydons rely on MediaOne's defense under the Cable Communications Policy Act. However, this defense does not create federal question jurisdiction for the Heydons. *See Public Serv. Comm'n,* 344 U.S. at 248, 73 S.Ct. 236 ("[I]t is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court"). In this instance, the nature of the underlying claim is one of state law trespass. The federal issue only arises in anticipation of a defense by MediaOne, namely, that the Cable Act gives it access to the Detroit Edison poles on the Heydons' property. Thus, the provision of the Cable Act cited by the Heydons, which may afford MediaOne a defense to a state law trespass action, does not create federal jurisdiction.

*Heydon*, 327 F.3d at 470.

Similarly, here, the nature of Plaintiff's underlying claims sound in state contract law. If Plaintiff were to file a coercive action, it would be for specific performance of the Purchase Agreement and possibly for damages under the Purchase Agreement. Likewise, if Defendants were to bring a coercive action to secure their rights under the Purchase Agreement, their action would sound in state contract law. Thus, the character of the threatened action is of state contract law, and a substantial, disputed question of federal law is not a necessary element of Plaintiff's claims. If the bankruptcy issue were to arise, it would be as a defense to Plaintiff's specific performance claim. Moreover, if a court were to determine that *Defendants* hold title to the property, then Plaintiff's failure to disclose its interest in bankruptcy would not matter and the federal issue would never even come up. Accordingly, the matter in controversy for which Plaintiff seeks declaratory judgment is not one that "arises" under federal law. *See Carpenter v. Leonard*, 791 F.2d 931 (6th Cir. 1986) (holding that the federal question must be essential to Plaintiff's claim to confer jurisdiction and the possibility that an issue of federal law may arise does not constitute a federal question); *Skelly Oil Co.*, 339 U.S. at 673 ("It would turn into the

federal courts a vast current of litigation indubitably arising under State law, in the sense that the right to be vindicated was State-created, if a suit for a declaration of rights could be brought into the federal courts merely because an anticipated defense derived from federal law.").

C. **Actual Controversy**

Even if Plaintiff's declaratory judgment claim sufficiently raised a federal question, jurisdiction is lacking because there is no actual controversy between the parties on the bankruptcy issue.

"[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007). In order to satisfy the case-or-controversy requirement, a dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and . . . 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)); *see also Hemlock Semiconductor Corp. v. Kyocera Corp.*, 747 F. App'x 285, 292 (6th Cir. 2018) (explaining that a plaintiff must demonstrate that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (citations omitted)).

Here, Plaintiff fails to demonstrate a justiciable controversy between the parties regarding the bankruptcy issue. Plaintiff does not allege that Defendants have challenged his discharge from bankruptcy or that they have argued that the bankruptcy proceedings prejudiced them.

(*See* Compl, generally, ECF No. 1.) In fact, Defendants specifically state the following in their Motion to Dismiss: "Plaintiff does not suggest that the Court or any creditors or other third-parties have objected to or challenged his bankruptcy petition or discharge. Further, Defendants do not care about Plaintiff's bankruptcy or petition or discharge." (Defs.' Motion to Dismiss at 5, ECF No. 7.) Thus, Plaintiff has not shown that the parties have adverse legal interests regarding his actions in the bankruptcy proceedings. To be sure, Plaintiff has alleged a dispute regarding ownership of the property under the terms of the Purchase Agreement, but not one related to his actions during his bankruptcy proceedings.

Plaintiff also fails to allege that there is sufficient immediacy or reality to warrant the issuance of the requested declaration. Plaintiff has not suggested that any creditors have challenged his discharge from bankruptcy or his failure to disclose the asset. Additionally, at this point, there has not even been a determination on the issue of whether Plaintiff owns the subject property. Indeed, that is the entire basis of the underlying claim—what are the parties' respective interests under the Purchase Agreement? As set forth above, if it is determined that Defendants hold title to the property, then Plaintiff's actions in bankruptcy would not matter. Accordingly, any conjecture by Plaintiff concerning a cloud on his title or his inability to get his title insured is hypothetical and based upon a factual situation that may never develop. *See Stotts v. Pierson*, 976 F. Supp. 2d 948, 974 (S.D. Ohio 2013) ("to be justiciable, a controversy 'must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop.'" (citations omitted)).

Furthermore, Plaintiff has not named as defendants any other "creditors" who may have

been prejudiced by his failure to disclose his interest in the Purchase Agreement. Without knowing the specific interests of the "creditors" that may have been prejudiced by Plaintiff's actions, the Court cannot fashion any type of declaration that would be conclusive in nature. For this alternative reason, the Court lacks jurisdiction over Count I.

**D.     The Court's Discretion to Exercise Jurisdiction over Declaratory Judgment Claims**

In addition, even if subject-matter jurisdiction existed in this case, the Court would decline to issue the requested declaration concerning Plaintiff's bankruptcy proceedings. The Declaratory Judgment Act "'confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). District courts are afforded this discretion "'because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp.'" *Id.* (quoting *Wilton*, 515 U.S. at 289). The Sixth Circuit has articulated five factors to consider when determining whether to exercise jurisdiction:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*Id.* (citations omitted).

Here, the Court would decline to exercise jurisdiction over Count I. As set forth above, Plaintiff has not alleged that there is an actual controversy between him and Defendants or any other creditor regarding his discharge from bankruptcy and/or his failure to disclose his interest in the Purchase Agreement. As a result, the declaratory remedy would not settle an actual controversy and would not be useful because the Defendants in this case do not challenge Plaintiff's discharge from bankruptcy, and no other creditors are parties to this action. Further, because no other creditors are parties to this action, potentially affected creditors would not have an opportunity to weigh in on whether they were prejudiced by Plaintiff's failure to disclose the asset in bankruptcy. It also appears that Plaintiff is attempting to use this declaratory action to block any future defenses or claims related to his alleged title in the subject property. For all of these reasons, even if Count I of the Complaint sufficiently raised a federal question, the Court would decline to exercise jurisdiction under the Declaratory Judgment Act.

**E.     State-Law Claims**

As set forth above, Plaintiff advances state-law claims for declaratory judgment. Under 28 U.S.C. § 1367, when a district court has original jurisdiction, it may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, the Court does not have original jurisdiction over any of Plaintiff's claims. Accordingly, Plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE** to Plaintiff advancing them in state court.

**IV.**

For all of the above-stated reasons, the Court **GRANTS** Defendants' Motion for Dismiss

for lack of subject-matter jurisdiction (ECF No. 7). Plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE** to filing in state court. The Clerk shall enter judgment accordingly and terminate this case from the Court's docket.

    **IT IS SO ORDERED**.

                                                /s/ *Chelsey M. Vascura*
                                                CHELSEY M. VASCURA
                                                UNITED STATES MAGISTRATE JUDGE